# United States District Court

## Central District Of Illinois

**FILED**
JUN 1 4 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

CASE NUMBER: 06- 3033-m

GEORGE OMELANCZUK

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __June 12, 2006__ in __Sangamon__ county, in the __Central__ District of __Illinois__ defendant did:

knowingly distributed 500 or more grams of cocaine;

in violation of Title __21__ United States Code, Sections __841(a)(1) & (b)(1)(B)__

I further state that I am a __DEA Special Agent__ and that this complaint is based on the following facts:
Official Title

See attached affidavit

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

s/ Christian A. McGuire
Signature of Complainant

Sworn to before me and subscribed in my presence,

June 14, 2006    10:45 AM    at  Springfield, Illinois
Date                                                    City and State

Byron G. Cudmore
U.S. Magistrate Judge

s/ Byron G. Cudmore

Name & Title of Judicial Officer           Signature of Judicial Officer

STATE OF ILLINOIS      )
                       ) ss
COUNTY OF SANGAMON     )

## AFFIDAVIT

Christian A. McGuire, being first duly sworn, hereby depose and state:

I am a Special Agent of the DEA, and have been so employed since January 1997.

1. This affidavit is submitted in support of a complaint charging George Omelanczuk ("Omelanczuk"), with distribution of at least five hundred grams of cocaine, in violation of Title 21, USC §§ 841(a)(1) and (b)(1)(B). I am familiar with the following facts based upon my own personal observation and upon information supplied to me by other law enforcement agents and through my position as a DEA Special Agent. I have not included all details concerning all events, such as all phone conversations, etc. All of the below summarized events occurred on June 12, 2006.

2. At approximately noon on June 12, 2006, I received information indicating that Donald Robinson was going to receive one half of a kilogram of cocaine from an individual identified as "Angel". As a result of the investigation summarized below "Angel" was subsequently identified as Omelanczuk. I was also informed that Robinson was utilizing cellular telephone number 217/816-5196 and that Omelanczuk was utilizing cellular telephone number 773/440-5096.

3. At approximately 1:42PM, I monitored a conversation that occurred between Robinson and Omelanczuk via their respective cellular telephones. During that and subsequently monitored conversations, Omelanczuk agreed to bring cocaine to Springfield, Illinois, to Robinson.

4. At approximately 7:18PM, I saw a person who was subsequently identified as Omelanczuk approach Robinson and speak to Robinson outside the Shell Gas Station located at 3250 Clear Lake Avenue, Springfield, Illinois.

5. I then saw Omelanczuk remain at the station with his car while Robinson drove north and east through the Shell gas station parking lot towards the Best Western Inn (3440 Clear Lake Avenue, Springfield, Illinois) and stop on the access road near the Shell gas station entrance. At approximately 7:20PM, I observed Omelanczuk drive his LeSabre automobile away from the Shell gas station and follow Robinson to the Best Western Inn parking lot.

6. SA Scott Giovannelli then observed Robinson pull his car (a Cadillac) into a space on the east side of the Best Western Inn's parking lot and Omelanczuk pull his LeSabre into the next space to the south.

7. At approximately 7:21PM, SA Giovannelli observed Robinson get into the passengers seat of the Le Sabre.

8. At approximately 7:22PM, SA Giovannelli observed Robinson get out of the LeSabre and go to the trunk of his vehicle. At this time an arrest signal was given and Robinson and Omelanczuk were taken into custody.

9. Immediately after Omelanczuk was taken into custody I approached him and attempted to advise him, several times, of his Miranda rights. I was never able to interject a full sentence as Omelanczuk repeatedly requested that officers "kill him now" and that he "did not want to be an embarrassment to his family."

10. SA Glenn Haas, while conducting a search of the LeSabre incident to Omelanczuk's arrest, located a plastic shopping bag containing 8 plastic baggies containing a white powdery substance on the floor board of the front seat. The gross weight of these eight baggies was 236.2 grams. SA Haas also located in the front passenger seat arm rest an additional 10 plastic baggies containing a white powdery substance. The gross weight of these 10 baggies was 293.8 grams. SA Haas subsequently field tested a random sampling the powdery substance seized from each of these two locations with positive results for the presence of cocaine. All of this cocaine was submitted to the DEA North Central Laboratory for further analysis.

11.   Later that evening I had an opportunity to speak with Robinson concerning his cocaine distributing activities with Omelanczuk. Prior to this interview occurring I, as witnessed by TFA James Jackson, read Robinson his Miranda warning and Robinson indicated that he understood his rights and would speak with law enforcement officers. During the interview Robinson indicated that he had received ½ kilogram quantities of cocaine on 3 or 4 occasions since January, 2006, from Omelanczuk. Robinson indicated that the most recent transaction he had with Omelanczuk occurred around June 1st or 2nd and that he purchased ½ kilogram of cocaine from Omelanczuk on this occasion. Robinson then stated that he met with Omelanczuk on Friday, June 9, 2006, and paid him $500.00 he still owed for this ½ kilogram of cocaine.

12.   Also later that evening, SA Giovannelli and I had the opportunity to speak with Omelanczuk concerning the events of the day. Prior to the interview occurring SA Giovannelli, as witnessed by SA Tom Murphy, read Omelanczuk his Miranda warning and Omelanczuk indicated that he understood his rights and would speak with law enforcement officers. At times during this interview, OMELANCZUK occasionally became physically upset, and had indicated that he would rather be dead then have to tell his family what had happened.

13. SA's Giovannelli and Murphy then asked Omelanczuk about the cocaine he was arrested with, and who the cocaine was going too. Omelanczuk indicated that he was delivering the cocaine to the other "big guy" (Omelanczuk stated he could not recall this person's name) that was also arrested by the police (referring to the Robinson). Omelanczuk told agents that he had recently met Robinson, and that he conducted a cocaine transaction with Robinson approximately 10 days ago. Omelanczuk stated that on the last transaction, he provided Robinson with "18-bags" in Chicago, Illinois and that he was paid $9500.00. Omelanczuk stated that was the first time he conducted a cocaine transaction with this person, and the activities today (June 12, 2006) would have been his second transaction with this other person.

14. Omelanczuk stated that his source of supply for the cocaine was a Hispanic male, identified by Omelanczuk only as "RUCO". Omelanczuk said that he did not know RUCO's real name, did not know where RUCO lived in Chicago, and stated he did not have a telephone number for RUCO. Omelanczuk stated that RUCO had delivered him the cocaine (provided on consignment) earlier in the day on June 12th, 2006, and that he (Omelanczuk) would owe RUCO approximately $9000.00. Omelanczuk indicated that he would have to meet with RUCO

somewhere on the northside of Chicago to pay the money he owed for the cocaine at a later time.

FURTHER AFFIANT SAYETH NOT:

s/ Christian A. McGuire

Christian A. McGuire, DEA Special Agent

Subscribed and sworn to before me this 14th day of June, 2006, at 10:45 a.m.

s/ Byron G. Cudmore

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE